UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NELIDA GOETZE Personal Representative of the Estate of Neyda Hernandez, JESSICA MACARIO as Parent and Legal Guardian of G.M., <br><br> Plaintiffs, <br><br> v. <br><br> THE KROGER CO., <br><br> Defendant. | No. 1:18-cv-01701-JPH-TAB |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Neyda Hernandez was killed and her minor grandson, G.M., injured when Jay Lapidus crashed his car into theirs. At the time of the accident, Mr. Lapidus was in a state of "extreme intoxication" caused by several drugs, including Alprazolam (Xanax). Plaintiffs—the estate of Ms. Hernandez and G.M.'s legal guardian—contend that Kroger should be liable for damages from the accident because it had dispensed Xanax to Mr. Lapidus. Kroger has filed a motion for summary judgment. Dkt. [25]. For the reasons that follow, Kroger's motion is **GRANTED**.

I.
**Facts and Background**

Because Kroger has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

1

A Columbus, Indiana Kroger filled Mr. Lapidus' Xanax prescription for 120 tablets (2 mg) three times in 2011: February 24, March 28, and April 29. Dkt. 27-2 (Morris Aff. ¶ 4). Xanax is a prescription-controlled substance known to cause "confusion, drowsiness, weakness, lightheadedness, incoordination, memory impairment, blurred vision, fatigue, and irritability." Dkt. 42-3 at 5. "A single 0.5 mg dose of [Xanax] is capable of impairing cognitive and motor performance during the first 4 to 6 hours after administration and chronic usage may affect performance throughout the day...." *Id.* The recommended maximum daily dose of Xanax is 4 milligrams. Dkt. 42-2 at 57. Mr. Lapidus' Xanax prescription was for 120, 2 milligram tablets, for 20 days, which results in a daily dose of 6 milligrams. Dkt. 42-4 at 2. When Kroger filled the prescription, it had no specific policies or procedures for prescriptions that exceeded the recommended maximum dosage. Dkt. 42-7 at 6 (Resp. to Interrogs. ¶ 9).

Mr. Lapidus' mother was prescribed Xanax and other narcotic medication. *Id.* at 5 (¶ 7). At least twice, Mr. Lapidus picked up prescriptions from Kroger for his mother. *Id.* Kroger's policies and procedures permitted a person to pick up a patient's prescription if the patient was unable to do so herself. *Id.* at 5–6 (¶ 8).

On May 23, 2011, in Florida, Mr. Lapidus attempted to flee the scene of an accident, ran a red light, and collided with Ms. Hernandez' vehicle. Dkt. 26 at 2; dkt. 41 at 3. As a result, Ms. Hernandez died and her infant grandson was injured. Dkt. 26 at 2; dkt. 41 at 3.

At the time of the accident, Mr. Lapidus was operating his vehicle in a state of "extreme intoxication." Dkt. 26 at 2; dkt. 41 at 3. A toxicology report revealed positive tests for several drugs, including carisoprodol, meprobamate, doxylamine, morphine, trazodone, Xanax, and cocaine. Dkt. 42-3 at 2. The report showed a blood Xanax concentration of 126 mg/L, which is five times more than the recommended dosage. *Id.*

Plaintiffs filed this suit alleging that Kroger negligently dispensed excessive amounts of Xanax, which caused Mr. Lapidus to operate his vehicle in an "extreme state of intoxication," thereby causing the motor vehicle accident on May 23, 2011. *See* dkt. 1-1. Kroger moves for summary judgment.[1] Dkt. 25.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

---

[1] Kroger objects to certain portions of Plaintiffs' designated evidence, *see* dkt. 43 at 1–4, but because Kroger is entitled to summary judgment even if that evidence is considered, its objections are moot.

3

A federal court hearing a case under diversity jurisdiction must apply the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

## III.
## Analysis

Indiana law governs Plaintiffs' negligence claim. *See Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 791 (7th Cir. 2013). To prevail, Plaintiffs must show: (1) Kroger owed them a duty, (2) Kroger breached its duty by allowing conduct to fall below the applicable standard of care, and (3) Kroger's breach of duty proximately caused them compensable injuries. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386–87 (Ind. 2016). "Absent a duty there can be no negligence or liability based upon the breach. Whether a duty exists is a question of law for a court to decide." *Id.* at 386–87 (citation omitted). This court must determine issues of Indiana law as it believes the Indiana Supreme Court would determine them. *See Webber v. Butner*, 923 F.3d 479, 482 (7th Cir. 2019).

Kroger argues that it owed no duty to Plaintiffs because the harm they suffered was not reasonably foreseeable and public policy weighs against the imposition of a duty in this circumstance. Dkt. 26 at 4, 9–10. Plaintiffs argue that Kroger owed them the duty to refrain from: (1) "filling excessive dosages of controlled substances to [Mr. Lapidus], who was clearly exhibiting behaviors of a drug addict"; (2) "dispensing pharmaceuticals beyond reasonable amounts from multiple physicians to individuals presenting the behaviors of a drug

addict"; and (3) "dispensing multiple, duplicative prescriptions from multiple doctors written for more than one patient to just one patient." Dkt. 41 at 10.

Because Indiana law has no such established duty, the Court considers three factors to determine whether a duty should be imposed: (1) the relationship between the parties; (2) the foreseeability of harm; and (3) public policy concerns. *Goodwin*, 62 N.E.3d at 386–87 (citing *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991)). All three factors weigh against imposing a duty on Kroger in this situation.

### A. The Relationship Between the Parties

Plaintiffs had no relationship with Kroger. Ms. Hernandez and G.M. were not involved in the transactions between Mr. Lapidus and Kroger. Nor did the accident occur on Kroger's property or involve Kroger's employees or vehicles. Instead, Kroger dispensed Xanax to Mr. Lapidus in Indiana, who caused an accident while driving in Florida. Plaintiffs' involvement in that accident is too tenuous to connect them to Kroger. The Court therefore believes that the Indiana Supreme Court would conclude that the lack of a relationship between Kroger and Plaintiffs weighs against finding a duty. *Compare Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind. Ct. App. 2004) (finding insufficient relationship between telephone company and driver of a car to impose duty for negligence in motor vehicle accident), *with Hooks SuperX v. McLaughlin*, 642 N.E.2d 514, 517 (Ind. 1994) ("That the law recognizes a relationship between a pharmacist and customer as one that gives rise to a duty in other circumstances is well-established.").

5

**B. The Foreseeability of Harm**

Kroger argues it was not foreseeable that Mr. Lapidus would injure Plaintiffs. Dkt. 26 at 8. It contends that just like bar owners don't expect their patrons to shoot each other, *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384 (Ind. 2016), and homeowners don't expect their guests to injure one another, *Rogers v. Martin*, 63 N.E.3d 316 (Ind. 2016), pharmacies do not routinely contemplate that their customers will operate motor vehicles under the influence of narcotics they dispense and injure unknown motorists. *Id.*

Plaintiffs respond that "the probability of injury to third parties, particularly the motoring public" is a foreseeable harm from supplying narcotic drugs to "those exhibiting drug-seeking and addictive behaviors." Dkt. 41 at 8. They assert that Kroger was in a "unique position to recognize that [Mr. Lapidus] was obtaining more drugs than he should have been obtaining under suspicious circumstances." *Id.* at 10.

To determine foreseeability in the context of duty, the Court assesses "whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it." *Goodwin*, 62 N.E.3d at 392 (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008)). This analysis looks to "the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Id.* at 393 (quoting *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996)). "Because almost any outcome is possible and can be foreseen, the mere fact that a particular outcome is 'sufficiently likely' is not enough to give rise to a

6

duty." *Id.* at 392. Instead, the question is whether a reasonable person would recognize the likelihood of harm and take precautions to avoid it. *Id.*

Here, the broad type of plaintiff is a member of the general public in a motor vehicle and the broad type of harm is a motor vehicle accident caused by a driver who is intoxicated from prescription drugs. *See id.* at 393–94 (identifying the broad type of plaintiff as a patron of a bar and the broad type of harm as a shooting inside a bar); *Estate of Staggs v. ADS Logistics Co., LLC*, 102 N.E.3d 319, 325 (Ind. Ct. App. 2018) (broad type of plaintiff is a motorist and the broad type of harm as "a vehicular accident after commercial cargo became unsecured and struck the motorists"). In the broadest sense, all motor vehicle accidents are foreseeable. *See Goodwin*, 62 N.E.3d at 394–95. But it is not foreseeable under *Goodwin* that a person would take too much of his prescribed drug, drive a car, and cause an accident that injures drivers from the general public.

This case is like *Williams v. Cingular Wireless*, 809 N.E.2d 473, 475 (Ind. Ct. App. 2004),[2] in which a driver was using his cell phone when he injured the plaintiff in a motor vehicle accident. The plaintiff sued the company that sold the cell phone. *Id.* The court held that it was not foreseeable that the sale of a cell phone would cause an accident. *Id.* at 478. "A cellular phone does not cause a driver to wreck a car. Rather, it is the driver's inattention while using the phone that may cause an accident." *Id.* This rationale applies here: a

---

[2] Although *Williams* was decided before *Goodwin*, the court applied the same foreseeability analysis as initially outlined in *Goldsberry*, 672 N.E.2d at 479.

pharmacy filling a prescription does not cause a driver to crash a car. Rather, it is the driver's decision to misuse prescription drugs and then drive a car that may cause an accident. The filling of the prescription "does not cause a driver to wreck a car." *Id.* With no causal connection between the filling of the prescription and the harm, there is no foreseeability. *See id.*

Nevertheless, Plaintiffs argue that Kroger possessed information that Mr. Lapidus was using excessive amounts of Xanax and exhibiting "drug-seeking and drug-abusing behaviors." Dkt. 46 at 11. But the foreseeability analysis involves a "more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Goodwin*, 62 N.E.3d at 393. Using excessive amounts of Xanax and exhibiting "drug-seeking and drug-abusing behaviors" are facts relating to the actual alleged occurrence, not the broad type of plaintiff and harm involved. Because there isn't a high degree of foreseeability that filling a prescription would result in a car accident, the second factor weighs in favor of finding no duty on Kroger in this case.

**C. Public Policy Concerns**

The public policy factor focuses on "who is, or should be, in the best position to prevent [an] injury and how society should allocate the costs of such injury." *Estate of Staggs*, 102 N.E.3d at 326 (quoting *Cox v. Stoughton Trailers, Inc.*, 837 N.E.2d 1075, 1080 (Ind. Ct. App. 2005)).

Kroger asserts that if a duty were imposed on a pharmacy to consider the risk of harm to third persons before dispensing a valid prescription written by a

8

licensed physician, it would force the pharmacy to weigh the welfare of unidentified third parties against the welfare of its customers. Dkt. 26 at 10. Plaintiffs argue that public policy should require pharmacies to look for patterns of drug-seeking behavior and take reasonable precautions to ensure that they are not dispensing drugs beyond reasonable amounts. Dkt. 41 at 9–10. They reason that imposing a duty would protect drug addicts and the public. *Id.* at 10. They also argue that "a pharmacy has no legitimate interest in dispensing multiple, duplicative prescriptions from multiple doctors written for more than one patient to just one patient." *Id.*

Here, public policy weighs against imposing a duty for three reasons: (1) the legislature's involvement in protecting consumer health and safety, (2) the social benefits of prescription medication, and (3) placing liability only on responsible parties.

First, the Indiana legislature acknowledges a strong public policy in protecting consumer health and safety. *See* Ind. Code § 25-26-13-16. Section 25-26-13-16 empowers pharmacists to exercise their professional judgment to refuse to fill a prescription when doing so is contrary to the health and safety of the patient. *Id.* However, "the statute merely permits—and doesn't require—a pharmacist to decline to fill a valid prescription," so it does not create a duty. *Bobay v. Walgreen Co.*, No. 1:07-CV-119 RM, 2009 WL 1940727, at *6 (N.D. Ind. June 30, 2009) (applying Indiana law) (citing *Hooks SuperX*, 642 N.E.2d at 518). That the Indiana General Assembly has declined to impose a duty weighs in favor of the Court not imposing a duty here.

*Cf. Doe #1 v. Ind. Dept. of Child Servs.*, 81 N.E.3d 199, 206 (Ind. 2017) ("Indeed, Indiana and other jurisdictions disfavor such end-runs around the legislature.").

Second, Indiana recognizes a strong public policy in preventing the overuse and misuse of prescription drugs, *Hooks SuperX v. McLaughlin*, 642 N.E.2d 514, 519 (Ind. 1994), and heeding the social utility of prescription medication, *see Webb v. Jarvis*, 575 N.E.2d 992, 997 (Ind. 1991).

In *Hooks SuperX*, the Indiana Supreme Court recognized that a pharmacist had a duty to withhold a prescription that the pharmacist knew the patient had been refilling too quickly. 642 N.E.2d at 519. The court noted the "strong public policy interest in preventing intentional and unintional drug abuse." *Id.* at 518. However, *Hooks SuperX* emphasized that its holding was narrow: "In imposing this standard of care, we emphasize that filling prescriptions faster than prescribed is not necessarily a breach of the fiduciary duty owed. . . . Lastly, we emphasize that pharmacists are not insurers against a customer becoming addicted to medication legally prescribed by physicians." *Id.* at 519.

The public policy considerations that Indiana has recognized weigh against imposing a duty on Kroger in this case. In *Webb*, the Indiana Supreme Court declined to impose a duty on physicians to consider the general public when prescribing medication. 575 N.E.2d at 997. The court explained that imposing such a duty would place physicians in an untenable situation: weighing personal risk of exposure to liability from third persons who could

be injured by the patient against his patient's need for the medication. *Id.* The court concluded that "the social utility derived from prescription medication can hardly be disputed and far outweighs the risk of harm to third parties." *Id.* The same public policy concern applies here. Imposing a duty would force Kroger to weigh the risk of exposure to liability from third persons possibly injured by their customers against the customer's need for the medication. As *Webb* explained, that is untenable. *Id.*

Third, imposing a duty on Kroger to prevent motor vehicle accidents would subject it to liability for injuries that it is not responsible for. In *Williams*, the court declined to impose a duty on a telephone company that sold a cell phone to a customer who later used it while driving and caused an accident. 809 N.E.2d at 478. The Indiana Court of Appeals noted that it was the driver's responsibility to drive with due care, especially because the telephone company had no control over the phone after it was sold. *Id.* The court explained that "[t]o place a duty on Cingular to stop selling cellular phones because they might be involved in a car accident would be akin to making a car manufacturer stop selling otherwise safe cars because the car might be negligently used in such a way that it causes an accident." *Id.*

Similarly, Kroger has no control over medication after it is dispensed. Imposing a duty on Kroger to prevent motor vehicle accidents, such as the one in this case, would effectively require it to stop dispensing medication entirely because it would have no way of preventing customers from taking medication before driving. *Williams*, 809 N.E.2d at 479. Imposing a duty on

11

Kroger in this case would make thus Kroger an insurer of its customers' safety, "which is contrary to the public policy of this state." *Goodwin*, 62 N.E.3d at 394.

Under controlling Indiana precedent, each of the factors weighs against imposing a duty in this case. Kroger is therefore entitled to summary judgment.

## IV.
## Conclusion

Kroger's motion for summary judgment, dkt. [25], is **GRANTED**. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 1/15/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Erin E. Bauer
BARBER & BAUER LLP
erin@barlegal.net

John Thornton
DO CAMPO & THORNTON, P.A.
jt@dandtlaw.com

Jeffrey S. Zipes
COOTS HENKE & WHEELER
jzipes@chwlaw.com